**ADVO SYSTEM, INC., a foreign corporation, Plaintiff,**

v.

**Renee F. WALTERS, Defendant.**

**Civ. A. No. 83 2305.**

United States District Court, E.D. Michigan, S.D.

June 19, 1986.

**428**

Ronald G. Acho, Christopher J. Johnson, Livonia, Mich., for plaintiff.

Daniel D. Swanson, Michael C. Curhan, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

This action arose out of the firing by the plaintiff, Advo System, of one of its employees, the defendant Renee Walters. In April of 1983, after her termination, Walters filed a complaint in Wayne County Circuit Court alleging, *inter alia*, the breach of an implied employment contract and religious discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act. Two months later, Advo filed the instant action against Walters alleging, *inter alia*, larceny, embezzlement and a variety of economic torts. The gravamen of this complaint was that when Walters left Advo's employ, she took certain sales orders she had solicited for Advo and attempted to discourage customers from dealing with Advo.

During the course of this litigation the defendant moved to stay these proceedings pending the outcome of the case in Wayne County. The plaintiff opposed this motion, and it was denied by this court. Later, the plaintiff moved to remand this action to state court, a motion which this court obviously could not grant as this case was originally filed in federal court. On November 3, 1984 this action was unanimously mediated at an amount of one dollar. The defendant accepted the evaluation, but it was rejected by the plaintiff on January 10, 1985. The action was tried before this court without a jury from December 3, 1985 until December 4, 1985. At the close of the plaintiff's proofs, this court granted the defendant's motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b), ruling from the bench. The defendant now moves this court for attorneys fees and costs pursuant to the local rules of this district and Fed.R.Civ.P. 11.[1]

The defendant's initial motion is for $2,601.80 in attorney's fees and costs, based upon plaintiff's refusal to accept the unanimous mediation award of one dollar. Local Rule 32(j)(3) provides that where a defendant accepts, and the plaintiff rejects a unanimous mediation evaluation, the plaintiff must obtain a verdict 10% greater than the evaluation in order to avoid the payment of actual costs to the defendant. Local Rule 32(k) defines actual costs as "those costs and fees taxable in any civil action and, an attorney fee for each day of trial as may be determined by the court." In this case, the plaintiff did refuse the mediation panel's award of one dollar, and failed to gain a verdict of at least 10% greater than that amount. Accordingly, the defendant is entitled to an award of attorney's fees and costs in the amount of

---

1. The defendant also invokes the equitable powers of the court. While the court recognizes its inherent power to assess attorney's fees in certain circumstances, *see, e.g., Roadway Express* *Co., Inc., v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612,

$2,601.80, to be paid by the plaintiff, as required by the rule.[2]

■ The defendant also moves for additional costs and attorney's fees pursuant to Fed.R.Civ.P. 11, which provides in pertinent part:

> Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he had read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11 was amended in 1983 to eliminate the requirement that there be a showing of subjective bad faith, and the standard now applicable is an objective one: whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts. *Stevens*

v. *Lawyers Mut. Liability Ins. Co. of N.C.,* 789 F.2d 1056 (4th Cir.1986); *Zalivar v. City of Los Angeles,* 780 F.2d 823 (9th Cir.1986).[3] The reason for the shift to the more stringent standard was made clear by the Notes of the Advisory Committee.

> Experience shows that in practice Rule 11 has not been effective in deterring abuses.... The new language is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions.... The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.... This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation.

The Committee did inject a cautionary note:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual and legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such facts as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts ... or was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

---

44 L.Ed.2d 141 (1975), Rule 11 provides an adequate remedy in this case.

**2.** The plaintiff argues that the cost of some depositions should not be charged against it because they were not used at trial. However, the expense of depositions not used at trial may be taxed as costs provided they were reasonably necessary to the case. 28 U.S.C. § 1920; *Nissho-Iwai Co. Ltd. v. Occidental Crude Sales,* 729 F.2d 1530 (5th Cir.1984); *In Re Air Crash Disaster At John F. Kennedy Intern. Airport on June 24, 1982,* 687 F.2d 626 (2d Cir.1982); *Kaimonwitz v.*

*Howard,* 547 F.Supp. 1345 (E.D.Mich.1982), *aff'd.* 751 F.2d 385 (6th Cir.1984). The three depositions for which the plaintiff is being charged were those of the three persons who testified, and it is obvious that they were necessary to the case and not merely investigatory.

**3.** For a thorough analysis of the differences between the old and amended versions of Rule 11, *see,* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181 (1985).

While it is clear that sanctions should not be lightly imposed, given the impact that may have on both the attorney's and party's reputations, *Gilmer v. City of Cleveland*, 617 F.Supp. 985 (N.D.Ohio 1985), it is equally clear that the amended Rule 11 *requires* that sanctions be imposed where the court finds that a party's or attorney's conduct was improper or unreasonable. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168 (D.C.Cir.1985). Neither may an attorney evade her duty to make a reasonable inquiry into the operative facts and relevant law before signing her name to a pleading by claiming that duty to the client comes first. As a court of this district recently said:

> Notwithstanding counsel's duty to zealously represent his client, an attorney is also obligated to refrain from raising claims without first conducting reasonable inquiry into the underlying facts and law on which those claims are predicated. Counsel has a duty to his client, and he has a duty to the fair administration of justice as well.... An attorney is obligated to dissuade his client from pursuing specious claims, and thereby avoid possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim

*Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252, 261 (E.D.Mich.1985); *See, Blair v. Shenandoah Women's Center*, 757 F.2d 1435, 1438 (4th Cir.1985).

 The plaintiff argues that the strict standard of the amended Rule 11 should not be applied to this case because it was filed a few months before the August 1, 1983 date upon which the amendments became effective. This argument reflects a misunderstanding of the requirements of Rule 11. The rule imposes upon the attorney a duty of reasonable inquiry as to *every* pleading, motion or other paper. This duty is not limited merely to the initial filing of the case, but rather is a continuing obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings. As discovery proceeds, and more time has been spent investigating the factual and legal merit of the case, there is even less justification for pursuing a specious claim than when the case is first filed and the attorney probably is not familiar with the case. Accordingly, this court will apply the objective standards of the amended Rule 11 to any papers filed in this action after August 1, 1983.

 Sanctions under Rule 11 should not be freely imposed, and mere lack of success on the merits cannot alone justify sanctions. *McCandless v. Great Atlantic and Pacific Tea Co.*, 697 F.2d 198 (7th Cir.1983); *Victory Beauty Supply v. Lus-Ter-Oil Beauty Products*, 562 F.Supp. 786 (N.D.Ill.1983). Rule 11 does not reverse the general rule that parties cannot shift the expenses of litigation to their opponents. However, the facts and circumstances of this case are exceptional and justify the imposition of sanctions. At the outset of the court's ruling in which it dismissed this case, it said: "I preface my findings with the remark that rarely have I seen such a dearth of evidence in the establishment of any claims in this Court." The court's opinion was replete with comments to the effect that there was no evidence to support plaintiff's claims. The court concluded by saying that this case presented "inferences on inferences, and a lot of innuendo," and that "there is great dearth of any evidence whatsoever in some respects, and complete failure in other respects to produce the necessary evidence."

The plaintiff's case centered around two claims: first, that the defendant stole orders from the plaintiff after she was fired, and second, that after her termination she poisoned the plaintiff's relationships with nine of its customers to the extent that they stopped doing business with the plaintiff. In support of these claims the plaintiff called only two witnesses, along with the defendant as a "hostile" witness. The strongest evidence adduced as to the first claim was that for one week after her firing, the defendant had in her possession one unsigned order, which was not binding on either the plaintiff or potential customer. There was even less evidence concern-

ing the allegations that the defendant had interfered with the plaintiff's relationship with its customers. The testimony revealed that the plaintiff never investigated why nine of its customers stopped doing business with it, nor had the plaintiff ever received any complaints from customers concerning misconduct by the defendant.

The plaintiff's damages claims were totally unsupported by any credible evidence. It introduced into evidence a projection of the sales it allegedly lost because of the defendant's misconduct. These projections were based merely upon conjecture, assuming that whatever a customer spent on direct advertising in 1982 would be the same or more in 1983. These projections were unsupported by any expert testimony concerning business trends, and it was admitted that none of the customers were contacted to confirm the projections.

The remaining allegations made by the plaintiff were equally unfounded. The plaintiff alleged that the defendant breached her fiduciary duty by not divulging that she owned and operated another business. There was no testimony that her activities in this business in any way interfered with her responsibilities to the plaintiff. To the extent this business was active at all, it was conducted in the evenings and weekends. The defendant's other business was not a competitor of the plaintiff, and there was no testimony that the defendant had a policy of prohibiting an employee from having another job. The final allegation was that the defendant was unjustly enriched because her last two weeks of pay were drawn against future commissions. Incredibly, the plaintiff's own witness testified that the plaintiff did not use a draw system and that the defendant was not overpaid. To summarize, the plaintiff's case was characterized by an absence of almost any credible evidence to support any of its claims, and also by an apparent failure by either the plaintiff or its counsel to investigate the charges.

On May 29, 1985, the final pretrial order was filed, bearing the signatures of counsel for both parties. In that order, the plaintiff reiterated all of its claims against the defendant. Pursuant to Rule 11, the signature of plaintiff's counsel was a certificate by him that the claims contained within that order were well grounded in fact, and that this certificate was supported by a reasonable inquiry into the circumstances of the case. This order was signed after discovery was complete, thus the dearth of evidence supporting the plaintiff's claims should have been obvious. The court finds that it was objectively unreasonable for plaintiff's counsel to sign the pretrial order and to continue to prosecute this case beyond that date, all in violation of Rule 11. In fact, the court cannot come to any other conclusion but that the plaintiff decided to continue prosecuting this case for purposes of harassment and to undermine the defendant's state court action. Accordingly, this court shall assess against the plaintiff and plaintiff's counsel attorney's fees and costs incurred by the defendant after May 29, 1985.

 While a finding of a violation of Rule 11 requires the imposition of sanctions, the selection of the type of sanction lies within the discretion of the court, ranging from a reprimand to a paying of attorney's fees. *Westmoreland supra.* Even if the court decides to assess attorney's fees, the prevailing party is not automatically entitled to full reimbursement of all its expenses, and the equities of the situation must be considered to balance the goal of deterring baseless litigation with that of avoiding financially ruining parties or attorneys. *Mohammed, supra.* Lastly, Rule 11 authorizes an award of only reasonable fees, imposing upon the court a duty to review the affidavits of counsel to ensure that the award is not excessive.

 Defense counsel submitted an affidavit detailing expenses incurred in this case, the total being $23,137.50. The bulk of plaintiff's objections to this affidavit concern time billed prior to May 29, 1985, and therefore are moot. The plaintiff also claims that all expenses incurred after August 28, 1985 should be stricken because the defendant refused to "consolidate" this

action with the defendant's state court claim. This argument is flawed in several respects. First, it does not address the plain fact that the plaintiff persisted in taking this case to trial long after it was reasonable to do so. Second, this action was set for trial on September 3, 1985 and thus the request to consolidate was not timely. Third, this case was originally filed in federal court as a diversity case and obviously could not be remanded to state court, as reflected by this court's summary denial of the plaintiff's motion to remand. The balance of the plaintiff's objections go to whether particular expenses relate to the state or federal court actions. The court will address these objections, *infra*.

The court has conducted its own review of defense counsel's affidavit and finds the fee request to be unreasonable. Given the defendant's vigorous and ultimately prevailing argument that this lawsuit bordered on the frivolous, her claim for over $20,000 in fees is too high. Over $13,000 is claimed after the May 29, 1985 pretrial order, even though discovery was essentially complete, and the six-hour trial was only six months later. While Rule 11 does allow for fee-shifting in certain circumstances, it should not provide a windfall for those who invoke its sanctions, and courts should scrutinize affidavits carefully to prevent abuses of Rule 11. To allow defense counsel to collect over $13,000 for six months of work in a case which was mediated at one dollar and by its own admission presented neither complex issues of fact or law, would constitute a windfall to the defendant.

There are several specific billings which trouble the court. Almost 40 hours, amounting to approximately $3,000, are claimed for work on a nineteen page trial brief. Given that this was a simple case, and that the affidavit reveals that numerous hours had already been spent on researching the relevant caselaw, that item is reduced by two-thirds to $1,000. Over 30 hours, for an amount of $3,478.75 is billed for time spent preparing for trial, including drafting an opening statement and conclusions of fact and law, organizing files, and engaging in conferences concerning the tri-

al schedule with counsel, court and client. The court finds this to be excessive, and reduces this claim by one-half to $1,740.00. Over eleven hours were spent opposing the plaintiff's motion to quash a subpoena, generating a five page brief citing two cases, resulting in a charge of $822.50. More than 4 hours involving some $300.00 are then claimed on time spent modifying the subpoena following the hearing in front of the magistrate. The court cannot understand, much less allow, over $1,100 to be billed in a dispute over a subpoena. Accordingly, the court reduces this claim by three quarters to $280.00. Approximately eight hours was spent in conference with the attorney of one Debra DeSallier, attending her deposition, and preparing a digest of that deposition. She was never called at trial and the defendant has made no showing that her participation was necessary to this case. Nor has the defendant rebutted the plaintiff's allegation that DeSallier's deposition was relevant only to the state action. The court will accordingly disallow the entire $678.00 billed for time spent dealing with DeSallier. Finally, the defendant was billed 32.75 hours, for a fee of $2,443.75, for preparing this motion for fees. There is no doubt that a Rule 11 motion which requires proof of objectively unreasonable conduct on the part of an opponent, is more complex than a petition for fees by a successful plaintiff's attorney in Social Security or civil rights cases. However, the court and attorneys must be mindful of the Supreme Court's admonition that attorney fee disputes ought not become the subject of a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Therefore, the fees credited to the time spent on this motion will be reduced by one-half to $1,221.50.

To review, the defendant will be awarded reasonable fees for time spent after May 29, 1985, when the final pretrial order was signed. The court has found that $6,481.00 of these billings to be unreasonable. Further, the fees and expenses already assessed due to the plaintiff's failure to ac-

cept mediation will also be reduced. Accordingly, this court finds that $5,821.00 of the defendant's attorney fees were reasonably incurred as a result of the plaintiff's violation of Rule 11. Pursuant to 28 U.S.C. § 1961, the plaintiff must pay interest on this amount from the date of the judgment allowing this award. *See, e.g., Spain v. Mountanos,* 690 F.2d 742 (9th Cir.1982); *Alexander v. National Farmers' Organization,* 614 F.Supp. 745 (D.Mo.1985). *Spell v. McDaniel,* 616 F.Supp. 1069, 1115 (E.D.N.C.1985). The interest rate shall be the average accepted auction price for the last auction of fifty-two week United States Treasury bills prior to the date of the judgment predicated on this order.

▇ In addition, the court finds that the plaintiff must be held accountable for the waste of judicial resources that its insistence on taking this matter to trial caused. Courts have become increasingly concerned with the unnecessary consumption of limited judicial resources caused by baseless litigation. *See, e.g., Itel Containers Intern. v. Puerto Rico Marine Mgt.,* 108 F.R.D. 96 (D.N.J.1985); *Olga's Kitchen v. Papo,* 108 F.R.D. 695, (E.D.Mich.1985); *Dominquez v. Figel,* 626 F.Supp. 368, (N.D. Ind.1986). While not appropriate in every case where Rule 11 sanctions are applied, the court cannot tolerate the drain on judicial resources caused by an action so totally without merit, and where there are such strong indicia of bad faith, as in the case at bar. According to one study, a single hour spent by a federal judge on a case costs the taxpayer six hundred dollars. Levin and Colliers, "Containing the Cost of Litigation," 37 *Rutgers L.Rev.,* 219 (1985). This court spent at least six hours trying this case, at a cost of $3,600. As the parties were likely unaware that such a sanction might be imposed, this amount will be discounted by one-half. However, the court hereby gives notice to future litigants that pressing meritless cases to trial will not be tolerated, and that the cost of such conduct to the public will not be ignored.

Accordingly, the plaintiff is hereby ORDERED to pay the defendant $2,609.30 in accordance with Local Rule 32. The plaintiff and plaintiff's counsel are ORDERED to pay the defendant $5,821.00 for expenses arising out of the violation of Rule 11, for a total award to the defendant of $8,430.30 plus interest thereon at the rate prescribed by 28 U.S.C. § 1961 from the date of entry of this judgment. The plaintiff and plaintiff's counsel are to pay one-half each, as this court was unable to determine who was at fault for the Rule 11 violation. IT IS FURTHER ORDERED that $1,800 be paid to the Clerk of the Court, by the plaintiff and its counsel, one-half by each. All of these payments are to be made within 30 days of this Order.

IT IS SO ORDERED.

## JUDGMENT

This action was dismissed pursuant to F.R.Civ.P. 41(b) on December 4, 1985. For the reasons stated in its memorandum opinion and order of this date, the court finds that the plaintiff has violated F.R.Civ.P. 11, and that the plaintiff must pay certain of the defendant's attorney fees. The court has also found that the plaintiff must pay certain fees and costs associated with its refusal to accept the mediation award, pursuant to Local Rule 32.

Accordingly, this court hereby orders the entry of a judgment in favor of the defendant in the amount of $8,430.30 in fees and costs, plus interest thereon at the rate prescribed by 28 U.S.C. § 1961 from the date of entry of this judgment, plus $1,800.00 to be paid to the Clerk of this Court, all to be paid within thirty days of the date of entry of this judgment. Therefore, a judgment in favor of the defendant is hereby entered.

IT IS SO ORDERED.