**In re KITCHEN FARE FOOD SERVICE, INC., Debtor.**

**Shelia SOLOMON, Trustee, Plaintiff,**

v.

**RIVERVIEW FINANCE CO. and Kate Kovacevic, Defendants.**

Bankruptcy No. 84–04346–R.

Adv. No. 85–0202–R.

United States Bankruptcy Court, E.D. Michigan, S.D.

Feb. 26, 1987.

Kenneth Schneider, Detroit, Mich., for plaintiff.

Joseph Walker, Detroit, Mich., for plaintiff's counsel Kenneth Schneider.

William Garratt, Bloomfield Hills, Mich., for defendants.

Stanley Bernstein, Detroit, Mich., for Creditors' Committee.

### ORDER DENYING MOTION FOR SANCTIONS

STEVEN W. RHODES, Bankruptcy Judge:

The defendant, Riverview Finance Company, seeks sanctions against the trustee, Shelia Solomon, and her attorney, Kenneth Schneider, for alleged violations of Rule 11 of the Federal Rules of Civil Procedure.[1] Specifically, Riverview contends that three pleadings were filed in this adversary proceeding in violation of Rule 11—the complaint, the first amended complaint, and the trial brief, in that Solomon and Schneider did not conduct an adequate pre-filing investigation and the pleadings were not well grounded in fact. Solomon and Schneider deny any violation of Rule 11.

The complaint was filed on February 26, 1985, alleging that Riverview had accepted conveyances of the property of Kitchen Fare, the debtor, from co-defendant Kate Kovacevic, the debtor's principal. On July 29, 1985, the first amended complaint was filed, alleging that over a substantial period of time, Riverview had failed to pay Kitchen Fare in full pursuant to their agreement under which Riverview purchased retail installment sales contracts from Kitchen Fare. It was further alleged that Riverview had commingled and failed

---

1. While the evidentiary hearing on this motion was under way, Riverview filed a petition in bankruptcy under Chapter 7. Later, Riverview's trustee abandoned the claim, and Riverview continued to prosecute it through its counsel.

to account for Kitchen Fare's funds, had exercised such control over Kitchen Fare that its distinct corporate identity was disregarded, and that Riverview fraudulently used Kitchen Fare's money to pay off the debts of Kovacevic and her previous business, Suburban Food Service, Inc., without consideration.

The trial brief filed on January 16, 1986, at the start of trial indicated more specifically that Riverview owed approximately $1,000,000 for "dealer reserve" funds and approximately $55,000 for a "second half" account, and that Riverview had borrowed from Henry Rabier but used the Kitchen Fare's money to repay the loans.

The non-jury trial ended after three weeks when the Court granted Riverview's Rule 41(b) motion to dismiss at the close of the plaintiff's case. The primary basis for this decision was the Court's conclusion that Kate Kovacevic, upon whom Solomon and Schneider relied to establish the allegations as to nature of the arrangement between Riverview and Kitchen Fare, lacked credibility.

The present motion followed.

## II.

### A.

Riverview contends that several witnesses available to Solomon and Schneider were not contacted prior to making the allegations that were eventually dismissed. These include Jack Boland, Kitchen Fare's accountant, Robert Piraino, Kitchen Fare's attorney, Diane Janes, Kitchen Fare's bookkeeper, Louis Demas, Kovacevic's attorney when she operated Suburban Food Services, and other unbiased witnesses. Thus, Riverview contends that Solomon and Schneider relied too heavily on the evidence provided by Kovacevic and two biased creditors, George Zaratzian and Henry Raiber. Riverview further contends that Solomon and Schneider failed to adequately investigate the evidence available through its own employees, who would have established Kovacevic's lack of credibility. Finally, Riverview attacks Solomon's failure to do any of her own investigation, or even to read the complaint, before it was filed.

### B.

Schneider testified that he examined Kate Kovacevic pursuant to Rule 2004 of the Bankruptcy Rules, and the information he obtained in that examination formed the basis of his claims at trial. He further testified that he had previously represented George Zaratzian, and was familiar with the relationship between Riverview and Kitchen Fare. During the period before the complaint was filed, he contacted Murdock Herzog, who was then Riverview's attorney, and they had several conversations about the claim. However, he was unable to resolve the matter or get a satisfactory explanation. He also talked with Dale Riggar, who was Kate Kovacevic's son and who was involved in Kitchen Fare.

Schneider testified that he was persuaded of Kate Kovacevic's credibility by the lack of any accounting from Riverview or segregation of funds by it, and because Riverview had written checks to itself on Kitchen Fare's accounts. Moreover, two creditors (Zaratzian and Fuller) had confirmed the control over Kitchen Fare exercised by Robert Fisher, Riverview's president. Prior to filing the amended complaint, Schneider was able to recover and review Kitchen Fare's records, and hired a bookkeeper to help establish the various claims.

Finally he testified that after he filed the first amended complaint, Riverview's new counsel severely hampered his effort to obtain discovery from Riverview to prepare for trial. Just prior to trial, the bookkeeper he hired reported to him that Riverview owed Kitchen Fare over $1,000,000. In his view, the loan office accounting reports, when they were finally obtained from Riverview, conclusively established that the 10% discount charged to Kitchen Fare by Riverview was actually a dealer reserve, not a discount, and therefore the trustee was entitled to recover it.

### III.

Rule 11, Federal Rules of Civil Procedure, provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In construing this rule, the Court in *Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252, 260–61 (E.D.Mich.1985) indicated:

One of the important additions to the amended rule is the requirement that an attorney make "reasonable inquiry" into the operative facts and relevant law before signing his name to a pleading, motion or other party, which signature constitutes his certificate that the paper is "well-grounded in fact and is warranted by existing law or a good faith argument for the extension of existing law." Unlike the subjective good faith of an attorney, "reasonable inquiry" is an empirically verifiable fact or event, inasmuch as the court can examine the efforts undertaken by the attorney to investigate her claim prior to filing suit. The focus of such an inquiry is upon events that can be observed and verified to some extent:

what · the attorney learned from his client, what efforts he undertook to corroborate the client's account, and so on. Any determination of what constitutes a "reasonable inquiry" depends largely on the particular facts and circumstances of a given claim. The court recognizes that there are many ways by which an attorney can reasonably apprise himself of the legitimacy of a claim prior to pursuing it in court, but the "reasonable inquiry" standard at the very least requires some kind of investigation, some affirmative conduct on the part of the attorney. By focusing upon the investigative efforts undertaken by the attorney, rather than seeking to scrutinize the unfathomable processes of his mind, the court is better able to apply the strictures of Rule 11 objectively and fairly.

*See also: Albright v. Upjohn Co.,* 788 F.2d 1217 (6th Cir.1986); *Olga's Kitchen of Hayward, Inc. v. Papo,* 108 F.R.D. 695 (E.D.Mich.1985).

As noted in *Advo System, Inc. v. Walters,* 110 F.R.D. 426, 429 (E.D.Mich.1986), the Advisory Committee Notes relating to the 1983 amendments cautioned:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

*See also: Pravic v. U.S. Industries-Clearing,* 109 F.R.D. 620, 623 (E.D.Mich.1986).

Moreover, "[s]anctions under Rule 11 should not be freely imposed, and mere lack of success on the merits cannot alone

justify sanctions." *Advo Systems, Inc. v. Walters, supra. See also: Reinhardt v. International Union,* 636 F.Supp. 864, 868 (E.D.Mich.1986).

### IV.

The Court concludes that there was no violation of Rule 11 in the circumstances of this case, and that Schneider, on behalf of Solomon, did perform an adequate investigation.

Attorneys practicing in bankruptcy have a special advantage in their pre-filing investigative work—Bankruptcy Rule 2004. This is a powerful tool, allowing an attorney investigating a claim to perform almost all of the necessary discovery before filing an action, and it is not normally available in contexts outside of bankruptcy. The availability of this discovery device must be considered a circumstance which would justify requiring greater pre-filing investigation in bankruptcy matters than might be required in ordinary civil litigation, where it is not available.

Nevertheless, Rule 11 only requires a reasonable pre-filing investigation in the circumstances, and it does not require that every potential witness be contacted and examined. Here, Schneider had contacted four witnesses whose evidence convinced him of the merit of the claims he was considering. That Schneider rejected the explanations of Riverview's employees does not suggest a Rule 11 violation. Rather, this circumstance only indicates that there was a dispute that Schneider was in fact attempting to investigate.

Moreover, it must be concluded that Schneider himself was genuinely convinced of Kovacevic's credibility. This is significant because if the Court had agreed with Schneider on this issue, it would have found for the trustee; Kovacevic's evidence, if believed, was sufficient to sustain the plaintiff's claims. It was only because the Court disagreed with Schneider's assessment of Kovacevic's credibility that the case was dismissed under Rule 41(b).

Although the Court at the conclusion of the adversary process, which included the capable cross-examination of Kovacevic, concluded that she lacked credibility, nothing suggests that it was unreasonable for Schneider to conclude before trial that Kovacevic was credible. Schneider found that he had no good reason to doubt her and every reason to believe her.

No doubt in these circumstances, Schneider was required to proceed. Ordinarily, an attorney should hesitate to proceed upon such a weighty case upon the uncorroborated testimony of a single witness, if only because a reasonable inquiry in such a case might require more. But here, there was more; Schneider had independently developed from the parties' records and other witnesses certain objective facts corroborating Kovacevic's evidence.

In these circumstances, a refusal to proceed may have resulted in a violation of the trustee's duty under 11 U.S.C. § 704 to "collect and reduce to money the property of the estate," for which the trustee and her attorney might have been accountable to the Court and the creditors. Thus, the Court concludes that Schneider and Solomon acted only to fulfill their obligations to the creditors under the Bankruptcy Code and not in violation of their duties under Rule 11.

One final consideration supports the conclusion that there was no Rule 11 violation. Plainly an allegation of an inadequate investigation must be adjudged in part on the basis of the availability of pertinent information. Thus, a moving party who has been more cooperative in providing information during discovery would have a stronger claim than a party who has not been cooperative.

Here, it is fair to conclude that Riverview was profoundly uncooperative in providing information to Schneider during discovery. In fact, the record reflects that despite Schneider's best efforts to obtain discovery, both informally and formally, Riverview's new counsel successfully thwarted most of those efforts, and Schneider received very little information from Riverview during discovery. Schneider had to go to extreme lengths to get any documents, and his attempts to depose River-

view employees were blocked by unnecessary objections. In the end, as the trial date approached, Schneider understandably gave up on discovery and decided to prepare his best case for trial.

The Court does not intend to suggest that Riverview's new counsel violated any of the Federal Rules of Civil Procedure; no such specific issue is before the Court. Nor does the Court intend to suggest that an attorney who has difficulty obtaining information through discovery is thereby relieved of his or her responsibilities under Rule 11. Rather, the significance of these observations is that where, as here, counsel who deliberately suppresses the flow of information by following a standard practice of requiring strict adherence to the legal technicalities of Rules 26–37, Federal Rules of Civil Procedure, and of raising every arguable objection, is somewhat less likely to persuade the Court that the opposing counsel did not perform an adequate investigation under Rule 11.

Accordingly, IT IS HEREBY ORDERED that the motion for sanctions is DENIED.