**Jesus JAEN, Elena Torres De Jaen, and the Conjugal Partnership Constituted Between Them, Plaintiff,**

v.

**The COCA–COLA COMPANY, Richard Doe, ABC Insurance Company, Defendant.**

Civ. No. 93–1086 (JP).

United States District Court, D. Puerto Rico.

Sept. 16, 1994.

Harold Vicente, Santurce, Puerto Rico, for plaintiff.

Radamés Torruella Del Valle, McConnell Valdés, San Juan, Puerto Rico, for defendant.

## OPINION & ORDER

PIERAS, District Judge.

On September 30, 1993, the Court levied a Two Thousand Dollar ($2,000.00) sanction on defendant's attorneys for their failure to deliver certain documents as previously ordered by the Court, and a One Thousand Dollar ($1,000.00) sanction on plaintiff's attorneys for their refusal to cease their inappropriate behavior during a deposition. *See* docket No. 40. Before and after sanctions were imposed, the attorneys for both sides requested the imposition of sanctions and disqualification of opposing attorneys numerous times. Even though originally the Court denied all requests for sanctions, eventually the Court was forced to intervene and use sanctions as a last attempt to rescue the discovery process. Finally, the parties decided to settle their differences and filed with the Court a Motion for Voluntary Dismissal with Prejudice (docket No. 70). In an effort to forget the sins of the past, and pursuant to their settlement agreement, the parties filed a joint motion requesting the reconsideration and reversal of sanctions (docket No. 71), which is now before the Court.

The attorneys in this action seem to forget that "[e]very case involves the rights ... of three parties: the plaintiff, the defendant, and the court...." *Higuera v. Pueblo International,* 585 F.2d 555, 556 (1st Cir.1978). During the evolution of this action the attorneys involved transgressed the rights of opposing counsel and those of the Court by turning this litigation into a boxing match rather than a formal proceeding. Their lack of respect towards each other and the Court constituted an assault on judicial integrity and resources. Therefore, and for the reasons stated below, the joint motion to reverse the sanctions is hereby **DENIED.**

## I. BACKGROUND [1]

On June 22, 1993,[2] the bell rang and the boxing match began in earnest [3] when plain-

---

1. We provide a complete factual background in view of our awareness that "sanctions must be weighed in light of the full record...." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam));

*See also Argo Marine Systems, Inc. v. Camar Corp.,* 102 F.R.D. 280 (S.D.N.Y.1984).

2. The complaint was filed on January 19, 1993.

3. While the animosity between the parties certainly escalated after the motions for disqualifica-

tiff's attorneys filed a motion requesting the disqualification of defendant's attorneys and the law firm of McConnell Valdés ("McVal") (docket No. 11) for alleged violations to Puerto Rico's Canons of Professional Ethics. McVal opposed the motion for disqualification by requesting sanctions against the plaintiffs, see docket No. 20, and responded in kind by filing with the Court during the Initial Scheduling Conference a similar motion for disqualification (docket No. 29) against plaintiff's attorneys. Both parties argued that the motions for disqualification were factually incorrect, frivolous, and improper.

Immediately after the Initial Scheduling Conference [4] the problems between the parties escalated at an alarming rate resulting on weekly if not daily filings with complaints and requests for sanctions. Throughout the month of September 1993 alone, the parties filed ten (10) motions regarding discovery conflicts. The problems and tension between the parties reached such levels that the Court had to schedule a Conference Call Hearing on September 21, 1993, in order to solve discovery problems which had previously been addressed at the Initial Scheduling Conference. See docket No. 36. During the Conference Call Hearing the Court ordered plaintiff's counsel to refrain from activities such as coaching the plaintiff and reading materials not related to the case during his client's deposition. In general, the Court was interested in ensuring that plaintiff's attorneys would stop obstructing their client's deposition. The Court also ordered defendant's attorneys to supply the plaintiff with various documents including a consent authorization form. The attorneys' failure to conduct themselves in a civil manner after the Conference Call Hearing created more problems, which in turn resulted in their non-compliance with the Orders of the Court as set out in the Initial Scheduling Conference and the Conference Call Hearing. On September 30, 1993, the Court issued an Order sanctioning defendant's attorneys in the amount of Two Thousand Dollars ($2,000.00) and plaintiff's attorneys in the amount of One Thousand Dollars ($1,000.00) for their failure to follow the Court's previous Orders, as well as for the delay and cost that resulted from their actions.

Unfortunately, these sanctions were not enough to stop the belligerence that characterized the parties' relationship from the onset of litigation. See docket Nos. 43, 66, and 68. Up until the dénouement of this case, the attorneys accused each other of bad faith, abusive practices, conflicts of interest, harassment, and the use of terrorist tactics. To summarize, nineteen (19) motions regarding discovery conflicts were submitted to the Court, over fifty percent (50%) of them within a single month. Defendant's attorneys requested sanctions against opposing counsel six (6) times, while plaintiff's attorneys requested the same four (4) times, for a total of ten (10) requests for sanctions. For every single discovery proceeding the Court was forced to intervene. Consequently, the Court spent an inordinate amount of time dealing with these attorneys on the phone and trying to resolve the motions filed. As if this bombardment of motions was not enough, the boxing match unfolded outside the ring as well. On the night of September 2, 1993, there was an incident at a local bar where attorneys Jesús Cuza and Rafael Vázquez were involved in an altercation related in part to this action. See docket No. 30. But for the Court's intervention it would have been impossible for the attorneys in-

---

tion were filed, problems were already brewing as defendant's attorneys had filed a motion to strike parts of the complaint as scandalous (docket No. 7) and had denounced plaintiff's attorneys alleged inability to comply with their discovery schedule. See docket Nos. 13, 23, and 25.

4. The Initial Scheduling Conference ("ISC") is designed to resolve and prevent any problems between the parties regarding discovery and the development of the case. See Jaime Pieras, Jr., Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method, 35 Catholic University Law Review 943 (1986). Therefore, the problems between the parties in this case that took place after the ISC are solely the result of their inability to work together.

volved to continue with the case in a civil, professional, and effective manner.

## II. DISCUSSION

█ Throughout the development of this action the Court faced a plain disregard for the formal nature of the proceedings, exemplified by the constant accusations among the attorneys and their inability to work together, which ultimately led to a direct disregard of the Court's Orders. The imposition of sanctions was therefore necessary in order to remind the attorneys of their duties as officers of the Court, as well as to ensure that the direct Orders of the Court would be followed in the future.

### A. *Sources of the Sanctions*

### 1. **Rule 37(b)(2)**

█ Counsel for both parties failed to comply with the Court's Orders issued during the Initial Scheduling Conference and after a Conference Call Hearing. *See* docket Nos. 36, 40, and 47. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides in part:

> [If] a party fails to obey an order to provide or permit discovery ... or if a party fails to obey an order entered under Rule 26(f) [orders made during a discovery conference], the court ... may make such orders in regard to the failure as are **just**. ...

(emphasis added). Rule 37 provides a list of options available to the Court in case of a violation, which includes the imposition of monetary sanctions:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the **attorney** advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure. ...

(emphasis added). The monetary sanction imposed by the Court was to be paid to the Clerk of the Court rather than to opposing counsel, making the Court's choice a relatively novel one. The Court forged this particular sanction because [5] "the specialized sanctions of the Federal Rules of Civil Procedure, [we]re ... inadequate to regulate th[is particular instance of] ... attorney misconduct." *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 566 (3rd Cir.1985) (en banc). The fact that the rule does not mention this specific kind of monetary sanction does not mean the rule prohibits it. In fact, the remedies listed under Rule 37(b)(2) are not exhaustive. *See J.M. Cleminshaw v. City of Norwich,* 93 F.R.D. 338, 355 (D.Conn.1981). Rule 37 enables a court to make such orders as are "just" and the list of examples provided in the rule is preceded by the words "among others." Also, as long as the sanction is "just" the Federal Rules of Civil Procedure "place virtually no limits on judicial creativity." *Anderson v. Beatrice Foods Co.,* 129 F.R.D. 394 (D.Mass.1989), *aff'd,* 900 F.2d 388, 394 (1st Cir.1990). Therefore, as long as the order issued is just, the remedy crafted by a court to impose sanctions is protected by Rule 37.

Originally, Rule 37 monetary sanctions were only compensatory in nature; the party that became a victim of discovery violations was allowed to recoup its losses. However, since the decision of the United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam), sanctions have also been available to penalize and deter certain kinds of conduct,[6] thereby expanding the options available to a court in order to deal with different and unique situations. This "general deterrent policy" is intimately tied with the "responsibilities counsel owe to the Court and to their opponents." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1067 (2d Cir.1979) (quoting *National,* 427 U.S. at 640, 96 S.Ct. at 2779). Therefore, Rule 37 has been ex-

---

**5.** *Foster v. Mydas Associates, Inc.,* 943 F.2d 139, 141–42 (1st Cir.1991), emphasizes the importance of explaining actions and citing legal sources when "shifting fees or imposing sanctions."

**6.** Rule 37 sanctions in particular can be used as a form of deterrence. *See Anderson v. Beatrice Foods Co.,* 129 F.R.D. 394 (D.Mass.1989), *aff'd,* 900 F.2d 388 (1st Cir.1990).

panded to include the type of sanctions imposed on the attorneys in this action.

In *Media Duplication Services v. HDG Software*, 928 F.2d 1228 (1st Cir.1991), the First Circuit stated that it "ha[s] no hesitation in endorsing the use of punitive monetary sanctions as a means of deterring neglect of th[e] obligation[s counsel owe to the court]." *Id.* at 1242. Nevertheless, in *R.W. Intern. Corp. v. Welch Foods, Inc.*, 937 F.2d 11 (1st Cir.1991), the First Circuit specified that Rule 37(b)(2) sanctions should be applied exclusively in situations where a court has issued an order and this order has not been respected. *Id.* at 15. The Court imposed the sanctions on McVal and the Vicente–Cuebas teams after a panoply of petitions for sanctions from both parties, an Initial Scheduling Conference, a Conference Call Hearing, the issuance of a Conference Call Hearing Order, and the failure of the parties to comply with such orders. Therefore, the sanctions imposed on the attorneys were properly issued under Rule 37 of the Federal Rules of Civil Procedure.

### 2. The Court's Inherent Power

■ Intimately tied to the caveat provided by Rule 37(b) permitting the court to issue "such orders ... as are just," is the court's *inherent power;* "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir.1989) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). The inherent powers of the Court:

> [Form] **the basis** for continued development of procedural techniques designed to make the operation of the court more efficient, to preserve the integrity of the judicial process, and to control the courts' dockets.

*Heileman*, 871 F.2d at 651 (emphasis added). The Federal Rules of Civil Procedure [7] "form and shape" certain aspects of these inherent

powers while providing the Court with discretion in the absence of a specific mandate. *Id.* at 652. For example, in *Heileman* the trial court ordered the parties represented by counsel to appear at a pretrial proceeding to discuss, among other things, the possibility of settlement. The defendant corporation violated the order by failing to appear and the court imposed a sanction in excess of Five Thousand Dollars ($5,000.00). On appeal the defendant argued that the court had no power to order litigants represented by counsel to appear at a pretrial conference. The Court of Appeals held that while Rule 16 of the Federal Rules of Civil Procedure did not specifically provide the Court with the power to compel such persons to a pretrial conference, the trial court could order their appearance through the inherent powers of the court. Furthermore, the Court recognized that the Federal Rules of Civil Procedure do not limit a court's inherent powers, which are needed to effectively manage the internal affairs and workings of the judicial system. These inherent powers allow for a flexibility crucial in adapting to "the dramatic rise in litigation in the last decade" and in limiting the "indulgent toleration of lawyers' misconduct[,] ... simply a luxury the federal court system can no longer afford." *Eash*, 757 F.2d at 565.

■ Both Rule 37 and the inherent powers of the courts permit the imposition of sanctions for conduct by lawyers that "falls short of contempt of court." Charles B. Renfrew, *Discovery Sanctions: A Judicial Perspective*, 67 Calif.L.Rev. 264, 269 (1979) (quoting *In re Sutter*, 543 F.2d 1030, 1037–38 (2nd Cir.1976)). The actions by the attorneys in this case certainly merited monetary sanctions under both Rule 37 and the inherent powers of the Court.

### B. *Monetary Sanctions Payable to the Court*

The Court specifically ordered the monetary sanctions payable to the Court instead of payable to opposing parties in order to

7. "The rules have been changed in recent years to deal with discovery abuse, and to expand authority to impose sanctions." Abraham D. Sofaer, *Sanctioning Attorneys for Discovery Abuse Under the New Federal Rules: On the Limited Utility of Punishment*, 57 St. John's L.Rev. 680, 683 (1983).

ensure that neither party would profit through sanctions from the delinquency of the other, so that "neither side [would be able to] ... recoup its losses" *Anderson,* 900 F.2d at 395. Moreover, the Court spent endless hours and resources serving as a referee for multiple discovery problems and became in a sense an "aggrieved" party due to the failure of the attorneys to conduct themselves in an appropriate manner and to follow the orders of the Court. In essence, the attorneys have to answer to the Court for their actions.[8]

The protection furnished by a monetary sanction is twofold. First, a monetary sanction is perceived as the mildest and most flexible of the examples listed under Rule 37(b). *See Cleminshaw,* 93 F.R.D. at 349 (quoting *Cine,* 602 F.2d at 1066); *Eash,* 757 F.2d at 567 (quoting R. Rodes, K. Ripple & C. Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 179 n. 466 (Federal Judicial Center 1981)). Second, a monetary sanction allowed the Court to levy the sanctions specifically on the attorneys, the parties unquestionably responsible for the discovery disputes:

> The imposition of a modest monetary sanction on counsel is obviously considerably less severe than outright dismissal of an action, and is perhaps more appropriate in that the penalty is directed at the lawyer responsible for the infraction, rather than the litigant who may be completely innocent.

*Eash,* 757 F.2d at 567. Monetary sanctions were simply the best choice available to the Court under the circumstances presented by this action.

■ Finally, it is clear that a monetary sanction must meet the guidelines provided by constitutional due process. *Societé Internationale v. Rogers,* 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). Due process protection requires a "fair notice and the opportunity for a hearing on the record."

*U.S. v. Nesglo,* 744 F.2d 887, 890 (1st Cir. 1984) (quoting *Roadway Express v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)). The attorneys received notice of the possibility of receiving sanctions both at the Initial Scheduling Conference as well as during the Conference Call Hearing and other communications with the Court prior to the imposition of the sanctions. Furthermore, the attorneys had repeated opportunities to argue the merits of imposing sanctions on opposing counsel as well as to explain why sanctions should not be imposed against them through their motions and conferences with the Court. *See Donaldson v. Clark,* 819 F.2d 1551, 1560 (11th Cir.1987). In short, the attorneys were not deprived of their due process of law by the sanctions.

### C. Timing of the Motion Before the Court

■ The joint motion before the Court was presented pursuant to the parties' settlement agreement. The parties seem to argue, without citation to law or authority, that the disappearance of the sanctions should naturally follow the amicable end of the dispute. The Court strongly disagrees; "[t]he obligation to answer for one's act accompanies the act." *Bolivar v. Pocklington,* 975 F.2d 28, 31 (1st Cir.1992) (quoting *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1079 (7th Cir.1987)). Settling a case does not entail a withdrawal of sanctions.

■ The fact that a court may retain jurisdiction to impose a sanction even in cases where judgment has already been entered demonstrates that the outcome of an action does not determine a sanction's fate. *See Eash,* 757 F.2d at 559–58. In *Cine,* plaintiff's attorney paralyzed discovery proceedings for almost four years by delaying his answers to interrogatories, by answering the interroga-

---

**8.** Ten years ago, a federal judge's hour of work was estimated at $600. *See Domínguez v. Figel,* 626 F.Supp. 368, 374 (N.D.Ind.1986), and *Advo System Inc. v. Walters,* 110 F.R.D. 426, 433 (E.D.Mich.1986); both cases adopt Levin and Colliers's *Containing the Cost of Litigation,* 37 Rutgers Law Review 219, 227 (1985), which cal-

culates the appropriate amount of a fine or sanction according to the amount of time spent by the Court solving the dispute. If the Court had imposed the sanctions based on the amount of time spent solving the parties' dispute the sanctions would have undoubtedly been much higher.

tories in a deficient manner, as well as by failing to comply with two orders issued by the court. *Cine,* 602 F.2d at 1068. Based on these repeated discovery violations, the magistrate recommended the exclusion of all evidence as to damages, a sanction tantamount to the dismissal of a claim. The district court did not follow the magistrate's recommendation believing that it lacked the power to impose a sanction of that caliber absent a finding of willfulness, and assessed costs against the plaintiff at One Thousand Dollars ($1,000.00). The Court of Appeals reversed the district court's sanction but adopted the magistrate's tougher recommendation finding that it was a just sanction in light of the facts. Furthermore, in *Bankatlantic v. Blythe Eastman Paine Webber Inc.,* 130 F.R.D. 153, 154 (S.D.Fla.1990), sanctions were levied against a prevailing party, and in *Lutwin v. The City of New York,* 106 F.R.D. 502, 504 (S.D.N.Y.1985), the Court of Appeals vacated a default judgment but kept the monetary sanctions imposed on the party that failed to obey a scheduling order.

By the time the parties reached a settlement agreement in the case at bar, the Court had already dedicated an exceptional amount of resources and time to the resolution of various discovery problems. The damage created by the attitude of the attorney's involved was already made, and settling the case cannot change that or the fact that these attorneys failed to comply with direct orders from the Court. The fact that the case was settled simply has nothing to do with whether the sanctions were correctly imposed; and in this action they were certainly imposed correctly.

## III. THE ISSUE OF CIVILITY

■ Judge Bruce S. Mencher defined civility as:

[The] decent behavior and treatment characterized by generally accepted social behavior and politeness practiced toward those with whom we come into conduct whether they be judge, lawyer, witness, or court personnel.

Bruce S. Mencher, *Civility: A Casualty of Modern Litigation,* The Washington Lawyer, Sept.–Oct. 1993, at 19, 20. While an occasional breach of civility will not destroy the system of justice, the continued and complete disregard of civility can have serious consequences on its overall effectiveness. Even though a case is neither a "minuet," [9] nor an "afternoon tea," [10] civility is simply an integral component of the contentious legal process.[11] The lack of civility within the legal profession constitutes a "societal problem, increased costs to the client, and the need for greater judicial leadership...." Mencher, *supra,* at 20. Therefore, courts have a responsibility not to permit attorneys to ignore the concept of civility when its disregard may hinder the quest for justice. *See* Judge Marvin E. Aspen, *Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit,* 143 F.R.D. 441 (1992).

Civility has been rendered conspicuous by its absence during the development of this case. Attorneys on both sides have accused each other of engaging in deceit, terrorist and nefarious tactics, and frivolous pleadings.[12] As mentioned before, the parties also accused each other of fraud, bad faith, conflict of interest, and harassment, among other things. . One attorney even boasted of being able to eat part of someone else's anatomy during an altercation outside of the

**9.** Bruce S. Mencher, *Civility: A Casualty of Modern Litigation,* The Washington Lawyer, Sept.–Oct. 1993, at 19, 52 (quoting *Dixon v. United States,* 565 A.2d 72 (D.C.App.1989)).

**10.** *Id.* at 52 (quoting *Dale v. Toronto R.W. Co.,* 34 Ontario Law Reports 104, 108 (1915)).

**11.** *See* The Model Code of Professional Responsibility EC 7–38 (1991):

"A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, setting,

continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so...."

**12.** "To opposing counsel, a lawyer owes the duty of courtesy, candor in the pursuit of the truth, cooperation in all respects not inconsistent with the client's interests and scrupulous observance of all mutual understandings." American College of Trial Attorneys, *Code of Trial Conduct,* p. 1 (1994).

courtroom.[13] The Court will not tolerate the blatant disregard of civility displayed by the attorneys in this action. The sanctions imposed are also directed at reminding the attorneys of their responsibility to the system of justice, to their clients, and to this Court.

## IV. CONCLUSION

An attorney should "prosecute an action diligently." *Cleminshaw*, 93 F.R.D. at 355. However, there is a clear distinction between prosecuting an action diligently and creating the hostile and unproductive environment promoted by the attorneys in this action. The failure of the attorneys to fulfill their obligations and comply with the Orders of the Court, as well as their lack of civility, is a charge against the legal system that warrants the Court's use of its sanctioning power. Finally, the fact that the attorneys involved are usually attorneys who conduct themselves in a professional and civil manner does not change the reality of what happened in this particular action.

The motion before the Court requesting the reversal of the sanctions imposed must therefore be **DENIED.**

IT IS SO ORDERED.

---

**13.** "A lawyer should avoid disparaging personal remarks or acrimony toward opposing counsel, and should remain wholly uninfluenced by any ill feeling between the respective clients. The lawyer should abstain from any allusion to personal peculiarities and idiosyncrasy of opposing counsel. *Id.* at 7.