John A. BAILEY, Plaintiff,

v.

**DART CONTAINER CORPORATION
OF MICHIGAN, Defendant.**

**No. CIV. A. 94–10758–RCL.**

United States District Court,
D. Massachusetts.

Aug. 29, 1997.

Erik P. Belt, Lee Carl Bromberg, Lisa M. Tittemore, Bromberg & Sunstein, Boston, MA, for Plaintiff.

Kenneth M. Reiss, R. Edward Brake, Robert A. Auchter, Julie Y. Patterson, Howrey & Simon, Washington, DC, Michael H. Shanahan, Banner & Allegretti, Ltd., Boston, MA, Dale A. Malone, Banner & Whitcoff, Boston, MA, Scott L. Robertson, Thomas J. Scott, Jr., Hunton & Williams, Washington, DC, for Defendant.

LINDSAY, District Judge.

Report and Recommendation accepted.

## REPORT AND RECOMMENDATION RE: PLAINTIFF BAILEY'S MOTION FOR RECONSIDERATION OF REPORT AND RECOMMENDATION RE: BAILEY'S CROSS–MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NOS (sic) 4,322,015 AND 4,473,167 (DOCKET ENTRY # 153)

*ORDER RE: MOTION FOR IMPOSITION OF OTHER SANCTIONS FOR FAILURE OF PLAINTIFF JOHN A. BAILEY TO COMPLY WITH THE LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS (DOCKET ENTRY # 72 )*

**March 12, 1997**

BOWLER, United States Magistrate Judge.

On April 24, 1996, this court issued a Report and Recommendation (Docket Entry # 108) on a motion for summary judgment filed by plaintiff John A. Bailey ("Bailey"), owner of U.S. Patent Nos. 4,322,015 ("the '015 patent") and 4,473,167 ("the '167 patent"). On December 13, 1996, this court issued a second Report and Recommendation (Docket Entry # 145) concerning two issues raised by defendant Dart Container Corporation of Michigan ("Dart") in a motion to reconsider (Docket Entry # 111) the April 24, 1996 Report and Recommendation. In the course of issuing a ruling on Dart's motion for reconsideration (Docket Entry # 111), this court offered Bailey the opportunity to file a motion to reconsider the portion of the April 24, 1996 Report and Recommen-

dation (Docket Entry # 108, pp. 47–49) which dealt with the prosecution history estoppel effect of a 1968 patent issued to Henry M. Chang ("the Chang patent" or "Chang").

On January 2, 1997, Bailey filed a motion for this court to reconsider whether he properly distinguished the Chang prior art reference in such a way as to allow the term "tear impression" to include non-continuous faults extending from the edge of the rim engaging means. (Docket Entry # 153). After conducting a hearing on January 21, 1997, this court took the motion to reconsider (Docket Entry # 153) under advisement.

Also pending before this court is the issue of whether to impose a monetary sanction on Bailey and/or counsel for their violation of LR. 40.1(e). In December 1994 Dart filed a motion requesting dismissal of this action or, in the alternative, a monetary sanction due to Bailey's failure to comply with LR. 40.1(e). The December 13, 1996 Report and Recommendation recommended against dismissal as a sanction and, instead, intimated that a monetary sanction would suffice. Dart's initial motion, supporting memorandum and reply brief (Docket Entry # # 72, 73 & 88) failed to detail the amount of an appropriate monetary sanction. Instead, Dart summarily requested a monetary sanction and a further opportunity to be heard. (Docket Entry # 73). Accordingly, this court set the January 21, 1997 hearing to give both Bailey and Dart the opportunity to address the proper amount, if any, of a monetary sanction. Dart and Bailey have submitted certain pleadings with respect to the amount of such a sanction (Docket Entry # # 168, 169 & 173) and the issue is therefore ripe for review.

I. *PLAINTIFF BAILEY'S MOTION FOR RECONSIDERATION OF REPORT AND RECOMMENDATION RE: BAILEY'S CROSS–MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NOS (sic) 4,322,015 AND 4,473,-167 (DOCKET ENTRY # 153)*

The April 24, 1996 Report and Recommendation discussed the Chang patent (Docket Entry # 108, pp. 46–49) in the course of recommending the denial of Bailey's motion for summary judgment (Docket Entry # 108, pp. 44–51). Because the opinion included

alternative bases to deny Bailey's motion for summary judgment irrespective of the prosecution history estoppel effect of the Chang patent (Docket Entry # 108, pp. 50–51), however, the merits of the recommendation to deny Bailey's motion for summary judgment on these alternative bases is not under review. Neither Bailey nor Dart sought reconsideration with this court of these alternative bases. The recommendation to deny Bailey's summary judgment motion based on these alternative grounds therefore remains unaffected by this opinion and, thus, this court need not revisit the recommendation to deny Bailey's summary judgment motion.

With respect to the Chang patent, the April 24, 1996 Report and Recommendation determined that, "One skilled in the art reading [the] prosecution history would therefore not interpret the term impressions in claim 1 of the '015 or the '167 patents as including or beginning at faults on the outer edge of a container lid." (Docket Entry # 108, pp. 47–48). The opinion also stated that, "By distinguishing the slits or faults in Chang from the impressions in the claimed invention, Bailey relinquished the ability to extend the scope of the '015 and the '167 patents to encompass impressions which include the structural equivalent of faults." (Docket Entry # 108, p. 48). Finally, the opinion read, in the context of discussing Bailey's reference to the Chang patent in the prosecution history, that, "[A] competitor is objectively and reasonably entitled to conclude that Bailey relinquished a scope of the '015 and the '167 patents which would encompass impressions which begin at a fault on the outer edge of the container lid."

■ The issue for reconsideration, therefore, is whether the term "tear impressions" can include a fault and, if so, the location of such fault[s] in light of the prosecution histo-

ry and Bailey's discussion therein of the Chang patent. Before turning to the prosecution history, however, claim interpretation initially involves examining the language of the claim in light of the specification and the prosecution history.[1] Accordingly, this court initially turns to the claim language and the specifications of the '015 and '167 patents vis-a-vis tear impressions and faults.[2]

Claim 1 of the '015 patent claims, "a pair of spaced apart tear impressions extending inwardly from the edge of the container lid." The pertinent language concerning tear impressions in claim 1 of the '167 is identical to the above quoted language except that the '167 patent substitutes the words "rim-engaging means" for the words "container lid." Dependent claim 3 of the '015 patent claims the limitations set forth in claim 1 and adds the feature of a fault at the end of each tear impression.[3] The language of dependent claim 3 of the '015 patent reads as follows, "The container lid of claim 1 wherein the exterior end of each tear impression is faulted through said polymeric sheet material." Dependent claim 7 of the '167 patent mirrors dependent claim 3 of the '015 patent except for the omission of the words, "through said polymeric sheet material."

The language defining the term "tear impression" in claim 1 of the '015 and the '167 patent therefore makes no reference to faults. Rather, the aforementioned dependent claims add the feature of a faulted tear impression with the fault located at the exterior end of each tear impression.

The specification supports this interpretation. Without referring to a faulted characteristic, the '015 patent gives a general definition of tear impressions as being "spaced apart" and "extending inwardly from edge (20)." The specification further notes that

1. The law applicable to claim interpretation as well as to prosecution history estoppel is fully discussed in the prior reports and recommendations and, therefore, need not be repeated.

2. Dependent claim 2 of the '167 patent claims a "faulted" wall which is not germane to the issue of whether tear impressions include faults.

3. Paragraph four of 35 U.S.C. § 112 mandates that dependent claims include a further limita-

tion of the claimed subject matter in the independent claim. The paragraph reads as follows:

> [A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

35 U.S.C. § 112, ¶ 4.

such tear impressions may "be molded, embossed or scored as a single continuous line into the surface of the lid" or "a plurality of spaced apart, relatively short impressions."[4]

A few sentences later, the specification describes a preferred embodiment of the claimed invention wherein only the exterior ends of the tear impressions are faulted:

> To facilitate initiation of the tears along tear impressions (22) it is further preferred that the exterior ends of said impressions be faulted substantially completely through the polymeric material of construction. Said faults can conveniently take the form of slits or notches (27) which are located at edge (20) of lid (10).

('015 patent, col. 3, 1. 18–24).[5]

Throughout the prosecution history of the '015 and the '167 patents, as discussed *infra*, Bailey distinguished the slits disclosed in Chang from the claimed impressions. In so doing, Bailey refuted an interpretation of the term tear impressions as including faults except for faults located at the exterior end of a tear impression. The prosecution history therefore supports the ordinary and plain meaning of the language of dependent claim 3 of the '015 patent wherein the exterior ends of each tear impression are faulted.

In an amendment submitted to the United States Patent and Trademark Office ("PTO"), Bailey stated that, "[I]t is equally important to note the distinction between applicant's tear impressions, which are not faults completely through the cover material,

and the slits or cuts 14 in Chang, which are."[6] (Docket Entry # 60, Ex. 7, p. B100096). In the same amendment, Bailey also depicted his invention as disclosing "limited faulting" with the "claimed feature of complete faulting of *only the exterior ends* of each tear impression." (Docket Entry # 60, Ex. 7, p. B100097, emphasis in original).

In a later amendment after the final rejection of application claims 1, 3 and 5,[7] Bailey emphasized that Chang disclosed non-converging slits as opposed to impressions and that Chang's slits were both continuous and complete faults through the material. Bailey's statement read as follows:

> In accordance with the text of the rejection, Chang shows "non-converging impressions." This is simply not the case. Firstly, Chang discloses non-converging *slits* 14 which are *continuous* and *complete* faults *through* the material of construction. The Chang *slits* cannot properly be viewed as being either the equivalent or as being suggestive of applicant's claimed *impressions* which are most definitely *not* complete faults through the material of construction.

(Docket Entry # 60, Ex. 7, p. B100112, emphasis in original).

Bailey reiterated this statement when the examiner rejected application claims 13, 3 and 5 of the '015 patent.[8] In an appeal to the Board of Appeals in the United States Patent and Trademark ("the Board of Appeals"), Bailey stated that, "[I]t is noteworthy that

---

4. The specification reads as follows:

 In accordance with the invention, container lid (10) comprises a pair of spaced apart tear impressions (22) which extend inwardly from edge (20) and each of which impressions (22) terminate in tear stop means (24) located within central portion (12). It is the role of tear impressions (22) to foster failure of the polymeric material of construction along the predetermined lines defined thereby. Accordingly, said impressions (22) may each be molded, embossed or scored as a single continuous line into the surface of lid (10) (as shown in FIG. 1) or may each be performed as a plurality of spaced apart, relatively short impressions (23) (as shown in FIG. 3).

 ('015 patent, col. 3, 1. 3–14).

5. The specification of the '167 patent contains similar language. ('167 patent, col. 3, 1. 28–34).

6. The examiner had rejected application claims 1, 3 and 5 because it would have been obvious to employ the non-converging edged strip in Chang in the device claimed in a 1974 patent issued to James J. Serritella ("Serritella"). (Docket Entry # 60, Ex. 7, pp. B100089–B100090).

7. The examiner rejected application claims 1, 3 and 5 because it would have been obvious "to employ the teaching of non-converging impressions in the device of Serritella, as shown in Chang." (Docket Entry # 60, Ex. 7, p. B100105).

8. The examiner rejected application claims 13, 3 and 5 inasmuch as, "It would be obvious to employ the teaching of non-converging or nonintersecting impressions, as taught by [Chang], in the device of [Serritella]."

applicant's impressions (22) are not complete faults through the material of construction." (Docket Entry # 60, Ex. 8, p. B100200, emphasis in original). In the same appellate brief, Bailey again noted that, "[I]t is equally important to note the distinction between applicant's tear impressions, which are not faults completely through the cover material, and the slits or cuts 14 of Chang, which are." (Docket Entry # 60, Ex. 8, p. B100209). The implication of these distinctions to one skilled in the art is that Bailey's impressions do not have complete and continuous faulting through the polymeric material and that the only location for a complete fault is at the exterior ends of the tear impressions.

Bailey specifically referenced dependent claim 3 both to the examiner prior to the final rejection (Docket Entry # 60, Ex. 8, pp. B100185–B100186) and to the Board of Appeals after the final rejection (Docket Entry # 60, Ex. 8, pp. B100209–B100210). Bailey's references to dependent claim 3 distinguish the "limited faulting taught in Claim 3" (Docket Entry # 60, Ex. 8, p. B100186) from the complete and continuous faulting in Chang's slits. In the context of distinguishing Chang, Bailey stated to the examiner that:

> [A]pplicant's tear impressions are most definitely *not* complete faults of the material of construction continuously along their entire lengths. Thus, Claim 3 specifically limits the complete faulting of the material *to the exterior ends* of the tear *impressions.*

(Docket Entry # 60, Ex. 8, p. B100186, emphasis in original).

In light of this prosecution history, dependent claim 3 undoubtedly includes tear impressions with faults localized at the exterior ends of the tear impressions. Stated otherwise, the dependent claims of the '015 and '167 patents claim tear impressions with the added features of faults completely through the polymeric material located at the exterior ends of the tear impressions. The dependent claims therefore include tear impressions with the added characteristics of faults. The April 24, 1996 Report and Recommendation determined otherwise (Docket

Entry # 108. pp. 46–49). On reconsideration, the April 24, 1996 Report and Recommendation is therefore modified by omitting the language from the last line on page 46 through the second line on page 50.

II. *MOTION FOR IMPOSITION OF OTHER SANCTIONS FOR FAILURE OF PLAINTIFF JOHN A. BAILEY TO COMPLY WITH THE LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS (DOCKET ENTRY # 72 )*

Neither Dart nor Bailey question this court's authority to impose a monetary sanction on counsel or a litigant such as Bailey for the violation of a local rule. Instead, both Bailey and Dart discuss the appropriate amount of such a sanction. Notwithstanding any waiver on the part of Bailey to object to this court's authority to issue a monetary sanction, a brief discussion is warranted due to the severe nature of a monetary sanction. *See Jaen v. Coca–Cola Company,* 157 F.R.D. 146, 147 n. 1 (D.P.R.1994) (recognizing that imposing a sanction generally requires a full and complete record).

The sole authority Dart cites to support a monetary sanction is LR. 1.3 based on Bailey's violation of LR. 40.1(e). Local Rule 1.3 provides that, "Failure to comply with any of the directions or obligations set forth in, or authorized by, these Local Rules may result in dismissal, default, or the imposition of other sanctions as deemed appropriate by the judicial officer." LR. 1.3. Although the rule lacks an express authorization of monetary sanctions, the rule encompasses "other sanctions as deemed appropriate by the judicial officer." Hence, to the extent this court deems a monetary sanction appropriate, which it does, LR. 1.3 authorizes such a sanction. The more troubling issue, however, is whether this court has the authority to impose a monetary sanction based on the magnitude of Bailey's misconduct irrespective of whether this court deems such a sanction appropriate.

■ The district courts' rule-making authority emanates from 28 U.S.C. § 2071(a) [9]

---

9. Under 28 U.S.C. § 2071(a), Congress "vested

federal district and circuit courts with the inde-

and Fed.R.Civ.P. 83 [10] as well as the inherent rule-making power of the district courts. *White v. Raymark Industries, Inc.,* 783 F.2d 1175, 1176–1177 (4th Cir.1986); *see also Whitehouse v. United States District Court for the District of Rhode Island,* 53 F.3d 1349, 1355 (1st Cir.1995) (district courts' authority to adopt rules stems from 28 U.S.C. §§ 2071 & 2072, Fed.R.Crim.P. 57 and inherent rule-making powers). A local rule imposing monetary sanctions such as LR. 1.3 is therefore valid as long as it does not constitute a " 'basic procedural innovation'," *Colgrove v. Battin,* 413 U.S. 149, 163–164 & n. 21, 93 S.Ct. 2448, 2456, 37 L.Ed.2d 522 (1973), is not constitutionally infirm or inconsistent with a federal statute or the Federal Rules of Civil Procedure and lies within the regulating powers of the district courts. *Whitehouse v. United States District Court for the District of Rhode Island,* 53 F.3d at 1355; *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 569 (3rd Cir.1985) ("only statutory requirement is that the local rules promulgated be consistent with acts of Congress and the rules prescribed by the Supreme Court"); *Martinez v. Thrifty Drug and Discount Company,* 593 F.2d 992, 993 (10th Cir.1979); *see also United States v. Claros,* 17 F.3d 1041, 1044 (7th Cir.1994) (quoting *Eash* ).

■ The imposition of monetary sanctions on an attorney for conduct impeding the administration of the court does not amount to a "basic procedural innovation." [11] *United States v. Claros,* 17 F.3d at 1045. In other words, because imposing a monetary sanction

under LR. 1.3 for the violation of the related case rule, LR. 40.1(e), does not "bear on the ultimate outcome of [this] litigation," *Colgrove v. Battin,* 413 U.S. at 163–164 & n. 21, 93 S.Ct. at 2456 & n. 21, monetary sanctions under LR. 1.3 do not amount to a basic procedural innovation. *See, e.g., Eash v. Riggins Trucking, Inc.,* 757 F.2d at 569 ("reasonable monetary sanction on an errant attorney is not a procedural innovation beyond the reach of a local rule since it is not outcome determinative"). Such a monetary sanction is neither constitutionally infirm nor in conflict with the Federal Rules of Civil Procedure or with an Act of Congress. *See, e.g., Eash v. Riggins Trucking, Inc.,* 757 F.2d at 567–568 (Court's decision in *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), refutes "argument that mere existence of the cost statutes, §§ 1920 & 1927, prevents reliance by courts on their inherent powers to support the imposition of a reasonable monetary sanction closely tied to the attorney's misconduct"); *Ruiz Ruiz v. Nazario Toro,* 108 F.R.D. 399, 401 (D.P.R.1985) (local rule assessing jury costs deemed consistent with acts of Congress, 28 U.S.C. § 2071 and Fed.R.Civ.P. 83).

Courts differ, however, with respect to the standard of conduct required to support the imposition of monetary sanctions on an attorney or a litigant. [12] *Compare United States v. Claros,* 17 F.3d at 1046 (dicta noting disinclination to assume that local rule assessing monetary sanctions required finding of bad faith, recklessness or wilful misconduct); *Dillon v. Nissan Motor Company, Ltd.,* 986

---

pendent authority to prescribe local rules of practice consistent with Acts of Congress and the rules of practice and procedure promulgated by the Supreme Court." *Whitehouse v. United States District Court for the District of Rhode Island,* 53 F.3d 1349, 1355 (1st Cir.1995). The aforementioned statute provides as follows:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure under section 2072 of this title.

28 U.S.C. § 2071(a).

**10.** Rule 83, Fed.R.Civ.P., states that:

Each district, acting by a majority of its district judges, may, after giving appropriate

public notice and an opportunity for comment, make and amend rules governing its practice. A local rule shall be consistent with—but not duplicative of—Acts of Congress and rules adopted under 28 U.S.C. §§ 2071 and 2075. Fed.R.Civ.P. 83(a)(1).

**11.** The related case rule enhances the administration of the court by avoiding piecemeal litigation and minimizing the occurrence of inconsistent decisions. *Thaxton v. United States,* 11 Cl. Ct. 181, 183 (Cl.Ct.1986). Hence, an attorney who violates this district's related case rule, LR. 40.1(e), impedes the administration of the court.

**12.** Local Rule 1.3 does not expressly prescribe the level of conduct necessary to justify a particular sanction.

F.2d 263, 267 (8th Cir.1993) (citing *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.), *cert. denied*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993), as holding "that a showing of bad faith is not necessary to support a monetary sanction against counsel"); and *Eash v. Riggins Trucking, Inc.*, 757 F.2d at 569–570 (district court has authority to promulgate local rules imposing reasonable sanctions on attorney for conduct "unbecoming a member of the bar," failing to comply with local rule or taking action in bad faith); with *Heckethorn v. Sunan Corporation*, 992 F.2d 240, 242 (9th Cir.1993) (bad faith or abusive litigation required to assess attorney's fees under court's inherent power); *Landon v. Hunt*, 938 F.2d 450, 454 (3rd Cir.1991) (vacating monetary sanction and noting that, "prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct"); *Zambrano, Tafolla v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir.1989) (disapproving financial sanctions "for mere negligent violations of the local rules" and recognizing requirement of reckless, grossly negligent, repeated and unintentional or wilful misconduct); and *Ray A. Scharer and Company, Inc. v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 321–322 (6th Cir.1988) (setting aside monetary sanction inasmuch as district court "made no definitive finding of 'bad faith' or 'conduct tantamount to bad faith'"). The differences in the standard of culpability are immaterial, however, inasmuch as this court finds that the conduct of Bailey's counsel meets the higher standard.[13]

Bailey's counsel was not merely negligent in failing to identify this action, filed in April 1994, as related to *Bailey v. M & N Plastics, Inc. and Dunkin Donuts, Inc.*, Civil Action No. 91–13121–WF ("the M & N Plastics case"). As of April 1994, counsel had filed an appearance in the M & N Plastics case and therefore undoubtedly knew of the M & N Plastics case at the time he completed the civil cover sheet and the civil category sheet in this action. The clear import of the language of LR. 40.1(e) and its predecessor is that a case is related to a previously filed case where it involves the same patent and "some or all of the parties are the same." Although Bailey's counsel attests that he did not make a conscious decision to omit the M & N Plastics case from the cover sheet of this action (Docket Entry # 174), such conduct was, at a minimum, misguided, grossly negligent and reckless.

■ First, to the extent counsel had doubts about the relatedness of this case and the M & N Plastics case, it was grossly negligent and reckless not to request a clarification from the clerk. The language of the local rule is straight forward and counsel's argument to the contrary is, to quote another district judge, "an elaborate linguistic deconstruction." Second, Bailey's counsel repeated this misconduct when he filed *Bailey v. Therma–Systems Corporation, Inc.*, Civil Action No. 94–11140–DPW ("the Therma–Systems case"). Consequently, for reasons more fully explained in the December 13, 1996 Report and Recommendation (Docket Entry # 145, pp. 10–14 & pp. 17–18), this court finds an award of a monetary sanction against counsel fully supported by the record.[14]

■ Bailey's counsel is the individual who completed the inaccurate cover sheets and category sheets. In this instance, therefore, it is more appropriate to direct the penalty " 'at the lawyer responsible for the infraction, rather than the litigant who may be completely innocent.' " *Jaen v. Coca–Cola Company*, 157 F.R.D. at 151; *accord Springer v. Seaman*, 658 F.Supp. 1502, 1506 (D.Me.1987) ("fairest way to enforce Local Rule 19(c) is to impose sanctions directly on the person responsible for noncompliance, Plaintiff's counsel"). The monetary sanction must, however, bear "a direct relationship to the alleged

---

13. The underlying facts and consequences of the misconduct of Bailey's counsel are summarized in the December 13, 1996 Report and Recommendation (Docket Entry # 135, pp. 10–14 & pp. 17–18) and are therefore only briefly highlighted in this opinion.

14. It is also worth recognizing that counsel and Bailey received notice and an opportunity to argue the merits of a monetary sanction "through their motions and conferences with [this] court." *Jaen v. Coca–Cola Company*, 157 F.R.D. at 151. In addition, LR. 1.3 warns counsel that sanctions may be imposed for the violation of the local rules, i.e., LR. 40.1(e).

misconduct." *Ray A. Scharer and Company v. Plabell Rubber Products, Inc.,* 858 F.2d at 320. Attorney's fees incurred by Dart as a direct result of Bailey's failure to comply with the related case rule are therefore compensable.

██ Dart seeks reimbursement solely for certain attorney's fees and costs associated with Bailey's misconduct. Where, as here, the applicable law, LR. 1.3, fails to expressly dictate an alternative method, it is "best to calculate fees by means of the [lodestar] time and rate method." *Tennessee Gas Pipeline Company v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir.1994). The starting point under this method is to determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 6 (1st Cir.1993) (quoting *Hensley).* Dart, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941. "[A] similar test of reasonableness and necessity [applies] to determine what expenses should be awarded." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951 (1st Cir.1984).

██ Bailey challenges Dart's fee by asserting, in part, that Dart did not support its fee application with contemporaneous time records. (Docket Entry # 173). In December 1984 the First Circuit announced a new, less forgiving standard for attorneys in their documentation of fee requests. *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992). "[H]enceforth, in cases involving fee applications ..., the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin,* 749 F.2d at 952. Contemporaneous records furnish evidence that the time requested was, in fact, expended and also provide "details about the work, such as the date it occurred, the kinds of work that were done and the percentage of time spent at each task." *Calhoun v. Acme Cleveland Corporation,* 801 F.2d 558, 560 (1st Cir.1986) (explaining necessity for contemporaneous records after citing *Grendel* standard). The specific documentary preconditions to a fee award require that fee applicants "submit a 'full and specific accounting of the tasks performed, the dates of performance, and the number of hours expended on each task.'" *Tennessee Gas Pipeline Company v. 104 Acres of Land,* 32 F.3d at 634; *Weinberger v. Great Northern Nekoosa Corporation,* 925 F.2d 518, 527 (1st Cir.1991).

In the case at bar, Dart submits an affidavit with an attached schedule of fees and costs. The schedule identifies each particular task performed, gives the number of hours expended, names the attorney or paralegal performing the task and lists their hourly rate. (Docket Entry # 168). The schedule also provides the subject matter of the legal research performed. *Cf. Tennessee Gas Pipeline Company v. 104 Acres of Land,* 32 F.3d at 634 ("failure to include some description of the subject matter of the task made it impossible to determine if the time factor allocated was appropriate or excessive").

The affiant, Attorney Scott L. Robertson ("Attorney Robertson"), an associate with the law firm of Howrey & Simon, counsel for Dart, attests that all of the billing entries in the schedule were extracted from the firm's computerized billing system. Howrey & Simon attorneys record their time on a daily, i.e., contemporaneous, basis in a log book after performing the particular task. Secretaries then enter the attorney's contemporaneous time records into the firm's computerized billing records. In lieu of submitting a printout of the computerized billing records or copies of an attorney's log book, Dart compiled the schedule which, according to Attorney Robertson, was taken directly from the computerized billing system. (Docket Entry # 168).

Hence, strictly speaking, the schedule is not a contemporaneous record. Rather, it is a true and detailed reflection of the contemporaneous time records. The schedule nevertheless provides all of the necessary detail to enable this court and opposing counsel to

fairly review the requested amounts. *Cf. Grendel's Den, Inc. v. Larkin,* 749 F.2d at 951 (constructing fee award without contemporaneous records makes it highly unlikely to arrive at a result fair to fee applicants and paying party and "decently reviewable by the court"). Moreover, the schedule's organization, which groups the subject matters of the work performed in a time-sequential order, simplifies the task of analyzing the billing records. Therefore, rather than harshly penalize Dart's counsel for failing to submit the actual log books and/or a computerized printout of the contemporaneous records, this court directs Dart to supply the records on or before March 21, 1997. In the event the schedule fairly and accurately reflects the supplied, contemporaneous records, this court will not alter the award rendered in this opinion based on the schedule. Conversely, however, in the event the schedule does not mirror the contemporaneous records, Bailey should seek reconsideration of the fee award on or before March 31, 1997.[15]

### A. *Reasonableness of Hours*

Dart seeks a total of $24,213.84 in compensation for fees and costs associated with: (1) its opposition to a motion for consolidation filed by Therma–Systems in the Therma Systems case; (2) Dart's preparation of the motion to dismiss and for sanctions due to Bailey's failure to comply with the related case rule (Docket Entry # 72); and (3) Dart's observation and analysis of the M & N Plastics case tried before Magistrate Judge Lawrence P. Cohen in May 1996. Bailey characterizes Dart's fees and costs as excessive, duplicative and unreasonable.

In calculating "the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den, Inc. v. Larkin,* 749 F.2d at 950–952; *accord United States v. Metropolitan District Commission,* 847 F.2d 12, 15 (1st Cir.1988) (quoting *Grendel* ). The schedule fully details the 147.75 hours actually spent. Hours therein which are excessive in light of the simplicity of the task, *see Pearson v. Fair,* 980 F.2d 37, 47 (1st Cir.1992) (suggesting in dicta that litigation may be so complex and novel that "a plaintiff may have to retain more than 15 skilled" attorneys); *Foley v. City of Lowell,* 948 F.2d 10, 19 (1st Cir.1991) (lack of complexity constitutes acceptable reason to reduce number actual hours), or which reflect charges for a number of lawyers to perform a task or to attend a court proceeding "when one would do," *Lipsett v. Blanco,* 975 F.2d at 938; *see, e.g., Grendel's Den, Inc. v. Larkin,* 749 F.2d at 953 (finding "no justification for the presence of two top echelon attorneys at each proceeding"), are suspect. Factors to consider in assessing the reasonableness of the number of hours include not only the complexity of the litigation and the nature of the task performed but also the number of attorneys used by the opposing side. *See Lipsett v. Blanco,* 975 F.2d at 939. Thus, "[A] litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case." *Lipsett v. Blanco,* 975 F.2d at 939. In the case at bar, Dart, as opposed to Bailey, has been the more ferocious adversary in terms of paper generated, attorneys utilized and arguments addressed and readdressed.

It is also particularly worth recognizing that fee shifting by the court differs from the negotiation which takes place between counsel and client in the private market. *See United States v. Metropolitan District Commission,* 847 F.2d at 17 (private practice fee is usually discussed and negotiated with client while fee determination by court involves no negotiation). Where a corporate client such as Dart has determined, for whatever reason, "that financial constraints must yield to an all-out effort to gain victory," the corporate client's "bill need not be swallowed whole by the client's adversary." *Ackerley Communications of Massachusetts v. City of Somerville,* 901 F.2d 170, 171 (1st Cir.1990). In other words, "The loser cannot be left at the mercy of the winner's lawyers, bound to pay not a 'reasonable' fee, but a fee on the order of what the victor—for whatever rea-

---

**15.** Failure to seek reconsideration will result in a waiver of Bailey's objection to a fee award based on the schedule as opposed to the computerized records or log books.

sons—might be willing to tolerate." *United States v. Metropolitan District Commission,* 847 F.2d at 17.

■ Turning to the reasonableness of the hours expended in preparing the motion to consolidate, Dart engaged in 57 hours of work by Attorney Thomas J. Scott ("Attorney Scott"), a partner at Howrey & Simon specializing in patent law and litigation, Attorney Robert A. Auchter ("Attorney Auchter"), a fifth year associate at Howrey & Simon with experience in the area of patent law, and Attorney Scott L. Robertson ("Attorney Robertson"), a senior litigation associate at Howrey & Simon. The majority of these hours involve time spent drafting, revising and editing Dart's memorandum in opposition to consolidation, researching consolidation issues under Rule 42, Fed.R.Civ.P., and conferring in the office or by telephone with respect to Dart's opposition to consolidation. In particular, counsel spent 52.25 hours outlining, discussing,[16] drafting, revising and editing the memorandum in opposition to consolidation. Attorney Robertson performed the majority of the work with respect to outlining and drafting the memorandum in opposition to consolidation.

These 52.25 hours, however, were both unnecessary and duplicative of work performed by Bailey in opposing consolidation. Bailey's brief in opposition to consolidation, filed on September 7, 1995, in the Therma Systems case (Docket Entry # 174, Ex. D), addressed the same case law, the same issue of added delay due to consolidation and the same factual background of the three related cases which Dart raised in its memorandum in opposition, filed on September 27, 1995, in the Therma Systems case (Docket Entry # 174, Ex. F). Only two of Dart's entries with respect to the 52.25 hours predate the September 7, 1995 filing of Bailey's brief.

Although Dart's memorandum goes into great depth about the wasted time associated with the filing and the hearing of arguments on summary judgment motions in the M & N Plastics case and the case at bar, Bailey placed these facts before the trial judge in the Therma Systems case in his memorandum of opposition (Docket Entry # 174, Ex. D, p. 2). To the extent Dart had additional concerns, such as the need for bifurcation and a specially crafted protective order, Dart could have noted these concerns in its letter to the defendant's counsel in the Therma–Systems case. Furthermore, consolidation is not a complex issue. The aforementioned 52.25 hours are therefore disallowed.

■ In August 1995 the trial judge in the Therma Systems case requested that the defendant's counsel consult with Dart's counsel to determine Dart's position on the issue of consolidation. Notwithstanding the simplicity of responding to the defendant's counsel inquiry, Attorneys Scott and Auchter spent a total of 4.75 hours engaged in telephone conferences with the defendant's counsel and in drafting, preparing and reviewing Dart's correspondence to the defendant's counsel request.[17] Spending almost five hours to determine Dart's position on consolidation and to prepare and draft a two sentence letter to the defendant's counsel is excessive. The 1.25 hours spent by Attorney Scott is therefore reduced to .50 hours and the 3.50 hours listed by Attorney Auchter is reduced to .75 hours.

■ Turning to the reasonableness of the hours spent on the motion to dismiss and for sanctions due to Bailey's noncompliance with the related case rule, Dart engaged in 36.50 hours of work by Attorneys Scott and Auchter and Attorney R. Edward Brake ("Attorney Brake"), an associate at Howrey & Simon at the relevant time specializing in the

---

**16.** Such discussions about consolidation and Dart's opposition thereto include meetings, office conferences and telephone conferences on August 21 and 30, 1995, September 8, 11, 18, 20, 21, 22, 23 and 26, 1995.

**17.** An undetermined portion of these hours also includes time spent drafting and transmitting correspondence to the trial judge in the Therma–Systems case concerning the motion to dismiss and for sanctions. (Docket Entry # 53, the Ther-

ma–Systems case). The two page letter to the trial judge in the Therma–Systems case identifies counsel and notes that Bailey's counsel had filed certain pleadings regarding the related case issue. The letter then attaches three pleadings concerning the related case issue filed in this action in order to ensure that the trial judge in the Therma–Systems case had a complete record. This court finds this work unnecessary.

area of patent law. Attorney Auchter spent 29.75 hours reviewing pleadings, researching the related case rule, conferring with Attorney Scott and others, and drafting and revising Dart's memorandum and reply brief. Attorney Scott spent 5.50 hours conferring with Attorney Auchter [18] as well as reviewing and revising Dart's memorandum and reply brief. Attorney Brake spent 1.25 hours reviewing information concerning Bailey's related litigations.

Having issued a recommendation on the motion to dismiss and for sanctions, this court is intimately familiar with the issues raised and the extent and reasonableness of Dart's efforts to dismiss this case. The briefing focused almost exclusively on the facts concerning Bailey's noncompliance and the appropriateness of dismissal as a remedy due to Bailey's noncompliance with LR. 40.1(e). While the issues were not complex [19] and the case law concerning dismissal as a sanction is well developed, Dart's 12 page memorandum and seven page reply brief were cogent and well organized. Nevertheless, Dart's efforts to dismiss this case on a procedural as opposed to a substantive basis appear excessive. *Cf. Grendel's Den, Inc. v.*

*Larkin,* 749 F.2d at 953–954 (finding 55 hours spent preparing 17 page brief involving single issue excessive while finding 16 hours to write 37 page brief reasonable). The 36.50 hours of time spent conferring, reviewing pleadings and background information and researching, drafting and revising Dart's memorandum and reply brief is therefore reduced to 14 hours on the part of Attorney Auchter and 2.50 hours on the part of Attorney Scott. Although Bailey's counsel spent significantly less time researching, drafting and revising his opposition to Dart's memorandum, Bailey's counsel had the benefit of the case law and the factual background cited by Dart's counsel.[20]

■ With respect to Dart's monitoring of the M & N Plastics case, Dart spent a total of *52 hours* [21] *by Attorneys Robertson and Auchter and Attorney William J. Matney ("Attorney Matney"), a second year associate at Howrey & Simon with patent law experience during the relevant time period.* The nonjury trial before Judge Cohen, however, only took approximately 17 hours to complete. In addition, although Dart argues that Attorney Matney's attendance at trial

18. The schedule does not include duplicate hours for different attorneys attending the same conference.

19. Dart's memorandum and reply brief (Docket Entry ## 73 & 88) did not address the more *complex issue of the appropriateness of awarding monetary sanctions in the form of attorney's fees and costs for the violation of a local rule.*

20. The quality of Dart's memorandum and reply brief was also superior to the quality of Bailey's opposition brief. *See Ackerley Communications of Massachusetts, Inc. v. City of Somerville,* 901 F.2d at 172 n. 5 (comparing number of hours spent by opposing parties but noting that such comparisons "may tell little about the quality of the work involved").

21. Bailey claims that Dart seeks a total of 54.25 hours for time spent monitoring the M & N Plastics trial. The 2.25 hours spent by Attorneys Scott and Robertson to prepare and attend the May 29, 1996 hearing before this court, however, do not involve monitoring the M & N Plastics trial. The hearing concerned the discovery schedule in this action. This court also heard argument on the motion to dismiss and for sanctions due to Bailey's noncompliance with LR. 40.1(e) (Docket Entry # 72), Dart's motion for separate trials on the issues of liability and dam-

ages (Docket Entry # 11), Dart's application to the clerk for an entry of default (Docket Entry # 68) and Dart's motion for reconsideration (Docket Entry # 111).

Dart's entries do not differentiate between the subject matter of the preparation. Instead, the three entries simply read, "prepare for hearing," "office conference" with respect to "hearing preparation" and "attend motion hearing." As previously explained, it is Dart's burden to supply a full and specific accounting of the nature of the work performed. *See Calhoun v. Acme Cleveland Corporation,* 801 F.2d at 560; *see also Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d at 7 (affirming disallowance of hours where entries left court "'guessing about their purposes'"). Moreover, the bulk of the time spent at the hearing did not involve the motion to dismiss and for sanctions. Compensation for the 2.25 hours is therefore denied. For similar reasons, the requested compensation of $870.10 in costs for "[t]ransportation to and from Boston" for Attorneys Scott, Robertson and Attorney William J. Matney on "5/96" is too general to allow this court to determine the reasonableness and necessity for such costs. Moreover, transportation costs of three attorneys to attend one hearing is excessive and the hearing only briefly addressed the motion to dismiss and for sanctions.

was necessary in order to observe witness demeanor, the issues at the bifurcated trial consisted of claim interpretation and infringement. Such issues do not ordinarily involve critical assessments of witness demeanor. Rather, they involve the trial judge interpreting the meaning of the claims and the characteristics of the accused product.

Transcripts from the 17 hour trial were filed in June 1996, approximately one month after the conclusion of closing arguments. A Dart paralegal or secretary could have determined, prior to trial, whether the parties or the court intended to order trial transcripts. Dart could have then obtained these transcripts and thereby eliminated the need for Attorney Matney to personally observe the entire trial. Such transcripts would also obviate the need for Attorney Matney to draft and redraft his notes about the trial. Attorney Matney nevertheless spent 42.50 hours attending the trial and then drafting, reviewing and revising his notes on the trial. Attorney Matney also spent an additional three hours conferring with Attorneys Robertson and Scott about the M & N Plastics trial. Correspondingly, Attorney Robertson spent 1.75 hours conferring with Attorneys Matney and Auchter about the trial. The existence of the transcripts, however, eliminates the need for the 4.75 hours of conference time. In light of the transcripts, Attorney Matney's time spent attending and summarizing the trial was also unnecessary and excessive. The transcripts are relatively brief and it should have taken an estimated eight hours to review them. Attorney Matney's 42.50 hours as well as the additional three hours he devoted solely to reviewing the transcripts are therefore reduced to a total of eight hours. Likewise, the transcripts eradicate the need for Attorney Matney's transportation charges to and from Boston. They also eliminate the need for the 1.75 hours of time spent by Attorneys Matney, Robertson and Auchter in conference prior to the start of the M & N Plastics trial.

In sum, reasonable hours for work performed by Attorneys Matney, Scott and Auchter are, respectively, eight hours, three hours and 14.75 hours.

B. *Reasonableness of Hourly Rate*

 "[A] district court . . . is not bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates." *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 8 (1st Cir.1993). Ordinarily, in determining a reasonable hourly rate, the starting point is the prevailing market rate in the relevant community. *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir.1996). The prevailing market rate in a community is the rate charged "'for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Andrade v. Jamestown Housing Authority*, 82 F.3d at 1190 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). "Moreover, the court is entitled to rely upon its own knowledge of attorney's fees in the surrounding area in arriving at a reasonable hourly rate." *Andrade v. Jamestown Housing Authority*, 82 F.3d at 1190.

 Bailey does not explicitly attack the hourly rates proposed by Dart for Attorneys Scott, Auchter and Matney. Attorney Scott's customary hourly billing rate through January 1, 1995 was $290 and thereafter $300. Attorney Scott has practiced in the area of patent law for more than 20 years and, as noted above, is a partner at Howrey & Simon. (Docket Entry # 168).

Attorney Scott's reasonable hours consist of 2.50 hours spent reviewing, editing and redrafting Dart's supporting memorandum and reply brief with respect to Dart's motion to dismiss and for sanctions. Attorney Scott expended the majority of this time prior to January 1, 1995. His reasonable hours also include .50 hours spent on the consolidation issue in 1995.

This court is familiar with the rates customarily charged by patent attorneys in the Boston market. Attorney Robertson also attests that Attorney Scott's rate is competitive with the billing rates charged by Boston attorneys with comparable experience. Attorney Scott's customary rate of $290 is therefore reasonable in light of the prevailing

rates for patent attorneys in the Boston market with Attorney Scott's level of skill and experience.

■ Attorney Auchter is a fifth year associate at Howrey & Simon. The majority of his experience is in the area of patent law. His customary rate in light of his experience is similar to the customary $145 rate of Attorney Kerry L. Timbers ("Attorney Timbers") at the time she prepared Bailey's opposition to Dart's motion to dismiss and for sanctions. Attorney Auchter's billing rate was $125 in 1994, $140 from January 1, 1995 to May 1996, and thereafter $155.

Attorney Auchter's reasonable hours consist of 14 hours spent researching and revising the supporting memorandum and reply brief on the motion to dismiss and for sanctions. He expended the majority of this time in 1994 and, to a lesser extent, in early 1995. Attorney Auchter's reasonable hours also include .75 hours spent in August 1995 conferring and drafting correspondence with respect to Dart's position on the consolidation issue.

Given this court's knowledge of the prevailing rates, Attorney Robertson's averment that Attorney Auchter's rates are competitive for the Boston legal community as well as the evidence of the customary rates of Attorneys Auchter and Kerry and the nature of the services performed (research, drafting and conferring and preparing correspondence), $135 constitutes a reasonable hourly rate for Attorney Auchter's work in 1994 and 1995.

■ Attorney Matney was a second year associate at Howrey & Simon with patent law experience during the relevant time period. Attorney Robertson asseverates that Attorney Matney's hourly billing rate of $135 was competitive with billing rates charged in Boston for attorneys with similar experience. Prior to January 1, 1995, however, Attorney Auchter, who had a higher level of experience and the same area of expertise, only billed at an hourly rate of $125. Given this court's knowledge of the Boston market, $125 constitutes a reasonable hourly rate for Attorney Matney's services performed in 1996.

The lodestar figure therefore amounts to $3,861.25 (three hours × $290 for Attorney Scott or $870; 14.75 hours × $135 for Attorney Auchter or $1,991.25; and eight hours × $125 for Attorney Matney or $1,000). Dart is not entitled to recoup any of the requested transportation costs.

■ After ascertaining the lodestar by multiplying the number of hours reasonably expended by a reasonable hourly rate, the court may adjust the lodestar figure depending on the circumstances of the particular case. *Hensley v. Eckerhart,* 461 U.S. at 434 & n. 9, 103 S.Ct. at 1940 n. 9. For example, the court may upwardly adjust the lodestar based on counsel's performance and the level of success obtained. Such upward adjustments based on the quality of counsel's representation are "rare." *Blum v. Stenson,* 465 U.S. at 899, 104 S.Ct. at 1548–49; *Wildman v. Lerner Stores Corporation,* 771 F.2d 605, 610–614 (1st Cir.1985) (remanding for recalculation of upward fee adjustment, if any, in light of *Blum*). Dart, as the fee applicant, bears the burden of justifying an upward adjustment. *Blum v. Stenson,* 465 U.S. at 898, 104 S.Ct. at 1548–49. Inasmuch as Dart's affidavit and the attached time schedule do not request such an adjustment, this court declines to upwardly adjust the lodestar. *See, e.g., Blum v. Stenson,* 465 U.S. at 898, 104 S.Ct. at 1548–49 (reversing upward adjustment and noting that fee applicant's affidavits failed to mention entitlement to such a bonus).

Pursuant to LR. 1.3, this court therefore awards Dart $3,861.25 assessed against Bailey's counsel as a monetary sanction for the violation of LR. 40.1(e).

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS** [22] that

---

**22.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79

Bailey's motion for reconsideration (Docket Entry # 153) be **ALLOWED** in part and **DENIED** in part to the extent set forth in part I of this opinion. Dart's motion for sanctions (Docket Entry # 72) is **ALLOWED** to the extent that this court awards Dart $3,861.25 assessed against Bailey's counsel for the violation of LR. 40.1(E).

(1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).